DISTRICT OF OREGON
**F I L E D**
**November 09, 2023**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re **Kim L. Drennen,** Debtor. | Case No. 23-30044-dwh7<br><br>MEMORANDUM DECISION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT[1] |
| **Howard Dahill** and **Loretta Dahill,** Plaintiffs, v. **Kim L. Drennen,** Defendant. | Adv. Proc. No. 23-03022-dwh |

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

## I. Introduction

In this action by Howard Dahill and Loretta Dahill against the chapter 7 debtor, Kim Drennen, the Dahills ask that debts Drennen owes them be determined to be nondischargeable. Because the Dahills share a last name, I will refer to them by their first names.

The Dahills have moved for summary judgment based on the asserted preclusive effective of three prepetition state-court judgments.

For the reasons below, I will grant the motion.

## II. Facts

The Dahills sued Drennen and others in an Oregon circuit court, asserting claims for relief including for financial abuse of a vulnerable person[2] and fraud.[3]

According to the allegations of the abuse claim, including the incorporated general allegations—

- The Dahills were vulnerable persons under Oregon Revised Statutes § 124.100(1)(e).[4]

- Drennen solicited loans from Howard by advertising that Drennen would use the borrowed funds to buy and renovate residences.[5]

- Drennen thereafter would "would continue to solicit and swindle money out of the Dahills for several years."[6]

---

[2] ECF No. 15 Ex. A at 8–9 ¶¶ 38–47.
[3] ECF No. 15 Ex. A at 9–10 ¶¶ 48–54.
[4] ECF No. 15 Ex. A at 3 ¶ 12, 8 ¶ 39.
[5] ECF No. 15 Ex. A at 3 ¶ 13.
[6] ECF No. 15 Ex. A at 4 ¶ 14.

Page 2 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

- Drennen told the Dahills that the projects' proceeds would be used to repay the loans with profit and interest.[7]

- The Dahills made nine loans to Drennen and others.[8]

- The Dahills made the loans in reliance on Drennen's promises.[9]

- Drennen never repaid the loans.[10]

- In allegations addressed separately to each of the nine loans—

    - For three loans (one, three, and four), the Dahills alleged that Drennen promised to use the proceeds to buy properties, put Howard's name on the titles, pay them a portion of the profit from renovating and selling the properties, and pay the loans from the property sales.[11]

    - For the other six, the Dahills allege no promises or covenants other than to repay with interest when agreed.[12]

- The defendants used the loan proceeds for their own personal benefit, including supporting a lavish lifestyle, and Drennen hid assets with his daughter, who used loan proceeds to buy real estate and to build a personal home costing more than $1 million.[13]

- The defendants wrongfully took the Dahills' money, constituting financial abuse of vulnerable persons under Oregon Revised Statutes § 124.110.[14]

According to the additional allegations in the fraud claim—

- Drennen made materially false representations to induce the Dahills to make the loans, including that—

    - The loans would be repaid in full with interest.

---

[7] ECF No. 15 Ex. A at 3–4 ¶¶ 13–14.
[8] ECF No. 15 Ex. A at 4 ¶ 15.
[9] ECF No. 15 Ex. A at 4 ¶ 15.
[10] ECF No. 15 Ex. A at 8 ¶ 37.
[11] ECF No. 15 Ex. A at 4 ¶ 16, 5 ¶¶ 20–22, Exs. 1, 3, 4.
[12] ECF No. 15 Ex. A at 4–5 ¶ 18, 6 ¶¶ 24–28, 7 ¶¶ 30–32, Ex. 5.
[13] ECF No. 15 Ex. A at 9 ¶ 44.
[14] ECF No. 15 Ex. A at 8 ¶ 41.

- - He would buy real property with the loan funds and put Howard's name on the property deeds.

  - He would sell the properties and give them 5 percent of the profit.

  - He would repay the loans.

  - Several projects were in the works.[15]

- Drennen kept the loan funds for his and the other defendants' use.[16]

- Drennen knew that he would not repay the loans.[17]

- When Drennen made the false representations, he intended that the Dahills rely on them by making the loans.[18]

- The Dahills justifiably relied on the misrepresentations and were damaged.[19]

After entering an order of default,[20] the court entered three limited judgments by default. None of the judgments referred expressly to any of the complaint's four claims for relief. Each awarded trebled actual damages, citing 124.100(2).

Drennen does not dispute that the state-court complaint and judgments were filed and entered in the forms attached to the motion.[21] He offers no evidence of his own.

---

[15] ECF No. 15 Ex. A at 10 ¶ 49.
[16] ECF No. 15 Ex. A at 10 ¶ 50.
[17] ECF No. 15 Ex. A at 10 ¶ 51.
[18] ECF No. 15 Ex. A at 10 ¶ 52.
[19] ECF No. 15 Ex. A at 10 ¶ 53.
[20] ECF No. 15 Ex. C.
[21] ECF No. 20.

Page 4 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

## III. Law

The Dahills seek summary judgment that the judgments are issue-preclusive of nondischargeability under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4).[22]

### A. *Jurisdiction and authority*

The district court has jurisdiction over this case under 28 U.S.C. § 1334(a) and over this action, a civil proceeding arising in this case, under 28 U.S.C. § 1334(b).

The district court has referred to this court all bankruptcy cases and proceedings in this district.[23] That referral includes this action. As an action to determine the dischargeability of debts, this action is a core proceeding,[24] which this court may hear and determine.[25]

### B. *Summary judgment*

Summary judgment for the movant is mandatory when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] The movant bears the initial burden of demonstrating a lack of genuine issue of material fact.[27]

A party asserting that a fact cannot be genuinely disputed must support the assert by citing to particular parts of materials in the record.[28] The court

---

[22] ECF No. 15 at 2.
[23] LR 2100-2(a)(1).
[24] 28 U.S.C. § 157(b)(2)(I).
[25] 28 U.S.C. § 157(b)(1).
[26] Fed. R. Civ. P. 56(a).
[27] *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986).
[28] Fed. R. Civ. P. 56(c)(1)(A).

need consider only cited materials.[29] If a party fails to properly support an assertion of fact, the court may consider the fact undisputed for purposes of the motion.[30]

### C. *Issue preclusion*

#### 1. **Federal law**

With irrelevant exceptions, under 28 U.S.C. § 1738 (the federal Full Faith and Credit Act), a state court's judgment has the same effect in a federal court as it would have in the courts of that state.[31] The contexts in which a state court's judgment has issue-preclusive effect in federal court include dischargeability litigation.[32]

#### 2. **Oregon law**

An Oregon limited judgment, such as those here, disposes of at least one but fewer than all requests for relief in an action.[33] It is a judgment[34] that may be appealed[35] and enforced by execution.[36] It is analogous to a federal judgment on fewer than all claims under Federal Rule of Civil Procedure 54(b).

Under Oregon common law, "[i]ssue preclusion applies to preclude relitigation of an issue or fact when that issue or fact has been determined by

---

[29] Fed. R. Civ. P. 56(c)(3).
[30] Fed. R. Civ. P. 56(e)(2).
[31] Hesse v. Sprint Corp., 598 F.3d 581, 588 (9th Cir. 2010).
[32] Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991).
[33] Or. Rev. Stat. § 18.005(13)(d); Or. R. Civ. P. 67 B.
[34] Or. Rev. Stat. § 18.005(8), (9).
[35] Or. Rev. Stat. § 19.205(1).
[36] Or. Rev. Stat. § 18.252(1).

a 'valid and final determination in a prior proceeding.'"[37] A judgment precludes relitigation of an issue if five elements are satisfied. Drennen contests only the first two of the five elements.[38] Those elements are that "the issue in the two proceedings is identical" and "[t]he issue was actually litigated and was essential to a final decision on the merits in the prior proceeding."[39] They are codified in Oregon Revised Statutes § 43.160: "That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

As the parties asserting issue preclusion, the Dahills have the burden of the establishing those two elements.[40]

### (a) Identical

To satisfy the requirement that the issue in the two proceedings be identical, "the precise question" must have been raised and determined in the prior proceeding."[41]

### (b) Actually litigated and essential

To satisfy the "actually litigated and essential" requirement, either the prior court's resolution of an issue must be apparent from the face of the

---

[37] McCall v. Dynic USA Corp., 906 P.2d 295, 297 (1995) (citation omitted).
[38] ECF No. 20 at 3.
[39] Nelson v. Emerald People's Util. Dist., 862 P.2d 1293, 1296–97 (Or. 1994) (citations omitted).
[40] Hancock v. Pioneer Asphalt, Inc., 369 P.3d 1188, 1192 (Or. App. 2016).
[41] Beezley v. City of Astoria, 269 P. 216, 220 (Or. 1928) (cleaned up, emphasis added).

Page 7 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

judgment or resolution of the issue must have been necessary to the resolution of the prior proceeding.[42] If not stated on the face of the judgment, whether an issue was actually litigated and necessary to the prior adjudication requires "an examination of the facts and circumstances of the prior adjudication."[43] Pleadings in the prior action "may be introduced to show what was adjudicated . . .. [T]he relief granted must necessarily be responsive to and in conformity with the pleadings and proof."[44]

The "actually litigated" requirement is satisfied even if the judgment in the prior action was entered by default without findings.[45]

### D.     *523(a)(2)(A) nondischargeability*

Section 523(a)(2)(A) excepts from discharge an individual debtor's debt "for money . . .to the extent obtained by . . . false pretenses, a false representation, or actual fraud." The elements of 523(a)(2)(A) nondischargeability are that (1) the debtor made a representation, (2) at the time of the representation the debtor knew it was false, (3) the debtor made the representation with the intent and purpose of deceiving the creditor, (4) the creditor relied on the representation, and (5) the creditor sustained a loss and damage as the proximate result of the misrepresentations.[46]

---

[42] Leach v. Scottsdale Indemn. Co., 323 P.3d 337, 342 (Or. App. 2014).
[43] Underwood v. City of Portland, 510 P.3d 918, 923–24 (Or. App. 2022).
[44] Jarvis v. Indem. Ins. Co. of N. Am., 363 P.2d 740, 743 (Or. 1961).
[45] Gwynn v. Wilhelm, 360 P.2d 312, 313 (Or. 1961).
[46] Ghomeshi v. Sabban (*In re* Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010).

Page 8 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

### E. *Financial abuse of vulnerable person*

#### 1. **Type of financial abuse**

An action for abuse of a vulnerable person may be based on physical or financial abuse.[47] In the Dahills' state-court complaint, they characterized Drennen's conduct as financial abuse and did not allege physical abuse.

Three circumstances in which financial abuse of a vulnerable person is actionable appear in 124.110. Under 124.110(1)(a), abuse occurs "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the defendant has a fiduciary relationship with the vulnerable person." Although the Dahills did not refer in their complaint or otherwise in state court expressly to 124.110(1)(a), they did allege that Drennen "took" money from them "wrongfully."[48] Because 124.110(1)(a) requires that the other person "wrongfully take" or appropriate money or property, that allegation tracks with 124.110(1)(a).

Neither of the other two 124.110(1) circumstances applies to the Dahills' state-court complaint.

#### 2. **"Wrongfully"**

The term "wrongfully" in 124.110(1)(a) is not defined by statute. In the Oregon court of appeals' 2003 decision in *Church v. Woods*, the court observed that the term "has a well-understood meaning in the law of torts with regard

---

[47] Or. Rev. Stat. § 124.110(2).
[48] ECF No. 15 Ex. A at 5 ¶ 41.

Page 9 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

to interference with legal interests,"⁴⁹ and "[c]onduct generally is 'wrongful' if it is carried out in pursuit of an improper motive or by improper means."⁵⁰ Improper means "must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of." Improper means include "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood." ⁵¹ The *Church* court adopted that dual motive-or-means meaning of "wrongful" for 124.110(1)(a).⁵²

### 3. Remedy

The court must award a vulnerable person injured by financial abuse three times all damages suffered plus reasonable attorney fees.⁵³

## IV. Discussion

### A. *The judgments are not preclusive of 523(a)(2)(A) nondischargeability on their faces.*

The treble-damages awards in each of the judgments are supported legally by the abuse claim, but not by any of the other claims. So the state court must have relied on abuse liability in entering the judgments.

Because the judgments' amounts are not inconsistent with the court also having implicitly found liability on the other claims for relief, including the fraud claim, the court might have done so. But it is impossible to determine

---

⁴⁹ 77 P.3d 1150, 1153 (Or. App. 2003).
⁵⁰ *Church*, 77 P.3d at 1153.
⁵¹ *Church*, 77 P.3d at 1153 (citations omitted).
⁵² *Church*, 77 P.3d at 1153.
⁵³ Or. Rev. Stat. § 124.100(2).

Page 10 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

from the faces of the judgments whether that occurred. The judgments are thus not issue-preclusive of any state-law issue other than those necessary to support the abuse claim. In other words, the faces of the judgments are not preclusive of the facts alleged in support of the fraud claim and thus are not preclusive of 523(a)(2)(A) nondischargeability.

### B. But the judgments are *issue-preclusive of 523(a)(2)(A) nondischargeability when read with the state-court complaint.*

Because the judgments do not on their faces state which issues were actually litigated and necessary to the judgments, identification of those issues requires examination of the complaint. The truth of the complaint's fact allegations was established by Drennen's default.[54] Because the judgments are preclusive only of abuse liability, only the complaint's allegations on which the court permissibly and necessarily relied to impose that liability can be considered when determining whether the judgments are issue-preclusive.

With one exception, the abuse claim alleged only that Drennen made and breached promises, which would not have supported the required finding of takings that were wrongful. The exception is the incorporated general allegation that, after initially soliciting loans from Howard, Drennen "would continue to solicit and swindle money out of the Dahills for several years." To

---

[54] Rajneesh Found. Int'l v. McGreer, 734 P.2d 871, 873 (Or. 1987); Or. R. Civ. P. 19 C.

Page 11 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

"swindle" is "to obtain money or property from one by fraud or deceit."[55] As explained below, in determining whether the complaint alleged facts sufficient to support abuse liability, the court could also have considered the allegations of the fraud claim for relief. And because the complaint allegations that would have supported a finding of wrongfulness are those related to fraud, I must assume that the court did in fact consider them. Because the court needed to consider the fraud allegations for all nine loans, it mattered not that the allegations specifically describing six of the loans did not include any promise other than to repay.

The fraud claim for relief included allegations that Drennen made false representations to the Dahills that he would repay and that he would make certain uses of the borrowed money, and he made those representations to induce them to make the loans. A speaker's representation about what the speaker "would" do, made to induce reliance by the listener, is a statement of the speaker's intention to perform a promise. To say that a promisor's statement of intention to perform the promise is false is to say that the intention does not exist—that the promisor does not intend to perform the promise, thus satisfying "a traditional element of common-law promissory fraud."[56] A promisor who does not intend to perform a promise necessarily knows of the absence of intent. So the Dahills' allegation that Drennen falsely

---

[55] Webster's Third New Int'l Dictionary 2312 (unabridged ed 1993).
[56] Estate of Schwarz v. Philip Morris Inc., 135 P.3d 409, 422 (Or. App. 2006).

Page 12 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

represented what he would do is necessarily an allegation that he made a representation of fact that he knew to be false. That's especially the case when combined with the allegation that he swindled them.

An Oregon court complaint must be liberally construed "with a view of substantial justice between the parties"[57] and by viewing it as a whole,[58] and the court must disregard any error or defect that does not affect the substantial rights of the adverse party.[59] For that reason, it would have been procedurally proper for the court, in determining whether to rule for the Dahills on their abuse claim, to have considered not just the allegations of the abuse claim for relief, but also those of the fraud claim for relief. The fraud claim's allegations, combined with the "swindle" allegation, demonstrate Drennen's deceit and misrepresentation, two recognized types of improper means constituting wrongful conduct.

The allegations of the entire complaint addressed "the precise question" raised by each of the five elements of 523(a)(2)(A) nondischargeability: (1) Drennen made representations; (2) he knew the representations were false; (3) he made the representations with the intent and purpose of deceiving the Dahills; (4) they relied on the representations; and (5) they sustained loss and damages as a proximate result of the representations.

---

[57] Or. R. Civ. P. 12 A.
[58] Kerby v. State Indus. Acc. Commission, 353 P.2d 857, 860 (Or. 1960).
[59] Or. R. Civ. P. 12 B.

Page 13 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

When the judgments are read with all the complaint's allegations, the judgments are preclusive of 523(a)(2)(A) nondischargeability.

### C. I reject Drennen's arguments against issue preclusion.

Drennen describes a case in which an Oregon state court elected to take evidence in support of a default judgment, and in a later dischargeability action, the bankruptcy court relied on that evidence to identify issues decide by the state court.[60] But Drennen does not explain why the lack of findings deprives a default judgment of preclusive effect. In fact, he separately agrees that an Oregon judgment can support issue preclusion even though granted by default and without findings.[61]

Drennen also argues that the state court might have based its implicit finding of wrongfulness simply on his failure to repay the loans, rather than "the alleged misuse of funds."[62] But to award damages the judge needed to determine that the complaint's fact allegations stated a cause of action.[63] And to make that determination, the judge needed to determine that the facts supported a finding of takings that were wrongful. I must assume that the judge did so. Considering the entire complaint, the court had a factual basis for finding that Drennen borrowed the lent funds either or both in pursuit of an improper motive or by improper means and thus wrongfully under

---

[60] ECF No. 20 at 5–6.
[61] ECF No. 20 at 4.
[62] ECF No. 20 at 6.
[63] *Rajneesh Found.*, 734 P.2d at 837.

Page 14 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

124.110(1)(a). Breach of contract, without more, would not have supported the necessary finding of wrongful conduct.

### D. *Whether the judgments are issue-preclusive of 523(a)(4) embezzlement or larceny need not be addressed.*

My determination that the judgments are nondischargeable under 523(a)(2)(A) renders it unnecessary also to decide whether they are also nondischargeable under 523(a)(4).

## V. Attorney fees and other costs

The Dahills' complaint here requests an award of attorney fees and other costs and a determination that the award is nondischargeable. Although a request for such an award can and usually is made and considered after entry of judgment,[64] no rule prevents it from being made and considered after the court has resolved all other claims in an action, and thus determined the prevailing party, but before judgment entry. Here, the latter approach would allow a single judgment to determine all issues here and avoid the need for a second round of nondischargeability litigation over the dischargeability of any award.

Based on my decision to grant the Dahills' motion, they are the prevailing parties. I will order that they file their request for attorney fees and other costs within 14 days after entry of the order and include in that request their argument for nondischargeability. I will also order that, within 14 days after

---

[64] Fed. R. Civ. P. 54(d)(2)(B)(i).

Page 15 – MEMORANDUM DECISION GRANTING PLAINTIFFS' etc.

service of their request, Drennen file any opposition, including any argument that the requested award is not nondischargeable.

## VI. Conclusion

I will grant the motion and prepare a separate order.

###